**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ABDUL MUHAMMAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-10225** |
| | ) | |
| **CHICAGO BOARD OF EDUCATION,** | ) | |
| **CHICAGO PUBLIC SCHOOLS,** | ) | |
| **PEDRO MARTINEZ,** individually and in his | ) | |
| official capacity as C.E.O. of the Board of | ) | |
| Education, **FELICIA SANDERS**, individually and | ) | |
| In her official capacity as Chief Schools Officer, | ) | |
| **DEVON LAROSA,** individually and in his official | ) | **JURY TRIAL DEMANDED** |
| capacity as Network #16 Chief, **ALLISON** | ) | |
| **TINGWALL,** individually and in her official | ) | |
| capacity as Executive Director of Principal Quality, | ) | |
| **KISHASHA WILLIAMS-FORD,** individually | ) | |
| and in her official capacity as Director of the Office | ) | |
| of Local School Council Relations, and **KELLY** | ) | |
| **TARRANT**, individually and in her official | ) | |
| capacity as manager of the Law Department of the | ) | |
| Chicago Board of Education, | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

**FOR VIOLATION OF**

**CONSTITUTIONALLY PROTECTED RIGHTS**

## Table of Contents

Introduction ...................................................................................................................1

Jurisdiction...................................................................................................................3

Venue ..........................................................................................................................3

Parties .........................................................................................................................4

Background...................................................................................................................5

    **Mr. Muhammad's Stellar History with the CBE**.................................................................5

        History with the CBE .............................................................................................5

        Achievement Awards .............................................................................................5

Facts ............................................................................................................................6

    **Customary Principal Selection Process** ............................................................................6

    **Uncustomary Principal Selection Process** .........................................................................7

    **Unwanted Teacher Accountability** ................................................................................14

    **General Harassment**.................................................................................................17

        False Claim of Accompanying a Student to a Citgo Gas Station ...................................17

        False Claim of Not Reporting Sexual Assault ...........................................................17

    **Unlawful Termination**...............................................................................................20

Counts.........................................................................................................................21

    **Count 1** ................................................................................................................21

    Violation of 42 U.S.C. § 2000e–2 – Religious Discrimination ...........................................21

    Muhammad v. CBE, Martinez, Sanders, Tingwall, LaRosa ...............................................21

    **Count 2** ................................................................................................................21

    Violation of 42 U.S.C. § 2000e–2 – Workplace Harassment .............................................21

    Muhammad v. CBE, Martinez, Sanders, LaRosa ..........................................................21

    **Count 3** ................................................................................................................22

    Violation of 42 U.S.C. §1981 – Make Contracts...........................................................22

    Muhammad v. CBE, Martinez, Sanders, LaRosa ..........................................................22

    **Count 4** ................................................................................................................24

    42 U.S.C. §1983 – Due Process Violation ..................................................................24

    Muhammad v. CBE, Martinez, Sanders, LaRosa, Williams-Ford...........................................24

    **Count 5** ................................................................................................................25

    42 U.S.C. §1983 – Equal Protection Violation .............................................................25

    Muhammad v. CBE, Martinez, Sanders, LaRosa, Williams-Ford...........................................25

**Count 6** ..............................................................................................................26

Violation of 42 U.S.C. §1985 – Conspiracy to Deprive..........................................26

Muhammad v. All Defendants .................................................................................26

**Count 7** ..............................................................................................................27

Violation of 42 U.S.C. §1986 – Neglects / Refuses to Prevent Violation...............27

Muhammad v. Sanders, Tingwall, LaRosa...............................................................27

**Count 8** ..............................................................................................................27

820 ILCS §115, *et. seq*. – Retirement Plan Contribution Violation ......................27

Muhammad v. All Defendants .................................................................................27

Prayer for Relief...........................................................................................................29

Plaintiff, Abdul Muhammad, (hereinafter, "Mr. Muhammad") by and through his attorneys, the Law Office of Power & Dixon, complains against Defendants, Chicago Board of Education and Chicago Public Schools (hereinafter, "CBE"), Pedro Martinez (hereinafter, "Mr. Martinez"), an individual, Devon LaRosa (hereinafter, "Mr. LaRosa"), an individual, Allison Tingwall (hereinafter, "Ms. Tingwall"), an individual, Kishasha Williams-Ford (hereinafter, "Mrs. Williams-Ford"), an individual, Kelly Tarrant (hereinafter, "Ms. Tarrant"), and (collectively hereinafter, "Defendants") as follows:

## INTRODUCTION

1. On or about May 24, 2022, Mr. Abdul Muhammad (hereinafter, "Mr. Muhammad"), a Black, male, Muslim member of the Nation of Islam, with a proven track record of successfully leading Chicago public schools, received an invitation to apply for the position of principal of Lindblom Math and Science Academy (hereinafter, "Lindblom").

2. From the moment of his acceptance of that invitation, the forces that be on the Chicago Board of Education, namely Mr. Pedro Martinez, the current C.E.O., began marshalling his resources and those of the Chicago Board of Education to thwart, hamper, and to otherwise prevent Mr. Abdul Muhammad from ever becoming the principal of Lindblom for no other reason than he is a Black, male, Muslim member of the Nation of Islam.

3. Unsuccessful in his desires to have the Lindblom Appointed Local School Council (hereinafter, "ALSC") to field additional candidates for principal of Lindblom after Mr. Abdul Muhammad was literally the last man standing, Mr. Pedro Martinez (hereinafter, "Mr. Martinez") rejected the four-year contract the ALSC forwarded on Mr. Muhammad's behalf and, in turn, directed Ms. Felicia Sanders (hereinafter, "Ms. Sanders") to direct the

Network #16 Chief, Mr. Devon LaRosa (hereinafter, "Mr. LaRosa") to issue Mr. Muhammad an interim-contract that did not have the same protections and warranties.

4. Mr. Martinez, as the architect of the discriminatory actions taken against Mr. Abdul Muhammad, utilized CBE employees in the Chief of Schools Office, the Network #16 Office, the Office of Principal Quality, the Office of Local School Council Relations, and in the Law Department to orchestrate, manage, and facilitate his discriminatory scheme to ensure Mr. Abdul Muhammad's tenure as principal of Lindblom would be short-lived.

5. On or about March 31, 2023, Mr. Martinez finally succeeded in his scheme and had Mr. Abdul Muhammad unceremoniously ousted and terminated from the principalship of Lindblom because of his religion, race, and gender.

6. The discriminatory basis of the termination is evidenced by the uncustomary tactics utilized in the attempt to prevent Mr. Muhammad from becoming the principal of Lindblom, and it is further evidenced by: 1) the blatant harassment of Mr. Muhammad by various CBE employees, 2) the attempts to undermine Mr. Muhammad's authority as principal, and 3) the pervasive prevarications promulgated against Mr. Muhammad during his principalship.

7. The discriminatory basis is also evidenced by the CBE's failure to notify Mr. Muhammad of any complaints, deficiencies, or performance issues prior to terminating him without even granting him a hearing to defend himself against the mystery undocumented charges.

8. The education of children in Chicago Public Schools, in general, and the education of children at Lindblom, in particular, should not be detrimentally impacted by the CBE, Mr. Martinez, and others, who prefer preference over proven and progressive productivity.

9. Thus, Mr. Muhammad brings this lawsuit under various federal statues to establish that the CBE, under the stewardship of Mr. Martinez, is lacking leadership and legality.

2

## JURISDICTION

10.     This Court has jurisdiction over the causes of action contained herein pursuant to 28 U.S.C. §1331, the provisions of Title VII, §2000e-5(f)(3), 42 U.S.C. §§1981, 1983, 1985, and 1986.

11.     This Court has supplemental jurisdiction over Count 8 under 28 U.S.C. §1367 as the allegations in Count 8 are so related to the claims in the other counts that they form part of the same case or controversy.

12.     On September 21, 2023, Mr. Muhammad filed a charge of discrimination against the CBE, alleging, *inter alia*, religious, sex, and racial discrimination with the United State Equal Employment Opportunity Commission (hereinafter, "EEOC").

13.     On July 17, 2024, after 180 days of the complaint being in its office without a resolution, the EEOC issued a "right to sue" letter for the charge of discrimination. (See Exhibit A)

14.     The "right to sue" letter provided Mr. Muhammad 90 days from the date of the issuance of said letter to bring a cause of action in the vein of discrimination.

15.     Mr. Muhammad filed this cause of action within the prescribed 90 days.


## VENUE

16.     Venue is also proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391 because the CBE does business and has employees located within this judicial district, the events that gave rise to this action took place in this District, and, upon information and belief, all Defendants work in and reside within this District.

<u>**PARTIES**</u>

<u>**Plaintiff**</u>

17.     Mr. Muhammad is an individual who, at all relevant times, was and is domiciled in Chicago, Illinois, he is a Black man who is Muslim member of the Nation of Islam, and he has worked as a teacher with the CBE for over 25 years.

<u>**Defendants**</u>

18.     CBE is a municipal corporation that is organized and regulated under the laws of the State of Illinois and maintains its principal place of business at 1 North Dearborn, Suite 950, Chicago, Illinois 60602.

19.     Mr. Martinez, at all relevant times, served as the Chief Executive Officer of the CBE.

20.     Ms. Sanders, at all relevant times, served as the Chief of Schools of the CBE.

21.     Mr. LaRosa, at all relevant times, served as the Chief of Network 16 of the CBE.

22.     Ms. Tingwall, at all relevant times, served as the Executive Director of Principal Quality of the CBE.

23.     Ms. Williams-Ford, at all relevant times, served as the Director of the Office of Local School Council Relations of the CBE.

24.     Ms. Tarrant, at all relevant times, served as the Manager of the Law Department of the CBE.

<u>**BACKGROUND**</u>

<u>**Mr. Muhammad's Stellar History with the CBE**</u>

*History with the CBE*

25.    Aside from the false allegations leveled against Mr. Muhammad that are the subject of this suit, he maintained a stellar record as an educator with the CBE.

*Achievement Awards*

26.    Mr. Muhammad has also received multiple awards for his stellar service as an educator.

27.    Mr. Muhammad received the Suave Performance Plus Award in 2003. (See Exhibit B)

28.    On or about June 4, 2003, then mayor of the City of Chicago, Mayor Richard M. Daley, awarded Mr. Muhammad a proclamation from for his stellar work. (See Exhibit C)

29.    On or about April 29, 2003, the then-president of the United States, President George W. Bush, recognized Mr. Muhammad for his excellent work teaching Chicago Public School students. (See Exhibit D)

30.    In 2004 and 2007, the Golden Apple Foundation nominated Mr. Muhammad for the Golden Apple Award, which is the highest teaching award in America. (See Group Exhibit E)

31.    Who's Who of American High School Teachers recognized Mr. Muhammad four consecutive years (2005 - 2008) as being an outstanding teacher. (See Exhibit F)

32.    In 2019, Mr. Muhammad collaborated with the Chicago producer of Hamilton to bring the stage play to the incarcerated students at Nancy B. Jefferson High School. (See Exhibit G)

33.    The only other time the play was off Broadway was when it played at the White House.

34.    Also, Mr. Muhammad demonstrated his exemplary care for his students when he walked them everyday after school to the nearby bus stop to help ensure the students' safety.

35.    This is the caliber of educator the Defendants chose to discriminate against and terminate.

## FACTS

### Customary Principal Selection Process

36.    Prior to Mr. Muhammad being selected as the principal of Lindblom in 2022, the two previous principals were Mr. Alan Mather (hereinafter, "Mr. Mather") and Mr. Wayne Bevis (hereinafter, "Mr. Bevis").

37.    Upon information and belief, Mr. Mather went through the customary selection process where multiple candidates were interviewed, he became one of the finalists, and the Lindblom ALSC selected him to be the principal of Lindblom.

38.    Upon information and belief, the ALSC forwarded to the Network 16 office the record indicating the approval vote for Mr. Mather along with the proposed four-year contract.

39.    Neither the then CEO of the CBE nor the Network 16 district chief rejected the proposed four-year contract.

40.    They accepted said contract without rebuttal, objection, or rejection. (See Exhibit H)

41.    After the completion of his first contract, the ALSC extended to him a second four-year contract, which the CBE and Network 16 district chief accepted.

42.    Mr. Mather is a white male.

43.    After Mr. Mather, the Lindblom ALSC selected Mr. Bevis to be the principal for Lindblom.

44.    Upon information and belief, Mr. Bevis went through the customary principal selection process where multiple candidates were interviewed, he became one of the finalists, and the Lindblom ALSC selected him to be the principal of Lindblom.

45.    The vote for Mr. Bevis carried with seven votes in favor of him becoming the principal of Lindblom.

6

46.    Upon information and belief, the ALSC forwarded to the Network 16 office the record indicating the approval vote for Mr. Mather along with the proposed four-year contract.

47.    Neither the then CEO of the CBE nor the Network 16 district chief rejected the proposed four-year contract.

48.    They accepted said contract without rebuttal, objection, or rejection. (See Exhibit H-1)

49.    After the completion of his first contract, the ALSC extended to him a second four-year contract, which the CBE and Network 16 district chief accepted.

50.    Mr. Bevis is a white male.


**Uncustomary Principal Selection Process**

51.    Mr. Bevis accepted a position over a virtual school and left Lindblom before the completion of his second four-year contract.

52.    The Lindblom ALSC began the customary process of selecting another principal to lead Lindblom.

53.    After CBE posted the vacancy, individuals began applying for the position.

54.    The ALSC was not comfortable with the first pool of applicants in the first round of vetting so they opened a second round.

55.    On or about May 24, 2022, Mr. Muhammad received an email from then ALSC Chairperson, Ms. Rosario Ayala (hereinafter, "Ms. Ayala"), inviting him to interview on June 1st for the vacant principal position at Lindblom.

56.    On or about May 25, 2022, Mr. Muhammad accepted said invitation.

57.    Upon information and belief, after Mr. Muhammad accepted the invitation to apply for the vacant principal position, Mr. LaRosa made his first unlawful attempt to interfere with the purview of the ALSC in its principal selection process when he called Ms. Lynn White

(hereinafter, "Ms. White"), who served as the then chair of the ALSC principal selection committee, to ask her if she had spoken to Mr. Muhammad's previous network chief?

58. Upon information and belief, Mr. LaRosa then said, "I'm not sure how strong a candidate he is."

59. Ms. White then explained to Mr. LaRosa that she would not and could not discuss council business with him.

60. So, before Mr. Muhammad even made it to the first interview for the principal position, Mr. LaRosa, upon information and belief, at the direction of Mr. Martinez, attempted to prevent Mr. Muhammad from becoming the principal of Lindblom because, among other things, he is a Muslim member of the Nation of Islam.

61. On or about June 1, 2022, Mr. Muhammad attended and participated in the interview along with the 10 other candidates who were selected to participate in that interview.

62. On or about June 9, 2022, after his stellar performance during the interview, Mr. Muhammad received an invitation to the Principal Candidate Forum (hereinafter, "Forum"), which consisted of the two finalists from the pool of 11.

63. On or about June 13, 2022, however, the other candidate, Ms. Patricia Harper Reynolds – the other finalist – withdrew from the forum because she found another position.

64. Thus, the Forum was rescheduled to June 15th at 6:00 p.m.

65. Once Mr. LaRosa became aware of Mr. Muhammad being the only remaining finalist to become the next principal of Lindblom, he made a second attempt to keep Mr. Muhammad from becoming the principal of Lindblom.

66. In this vein, he called Ms. Lynn White (hereinafter, "Ms. White") who was the then chairperson of the Lindblom ALSC principal selection committee, and said to her, "get

another candidate or two. I don't like that there is only one candidate to be presented at the forum. There is no choice to be made."

67. Ms. White then informed Mr. LaRosa that the Forum was not mandatory but they chose to provide it so the students, staff, and community could meet the candidates before the school council made a decision.

68. Ms. White went on to inform Mr. LaRosa that it was not his place to interfere with the established procedures as to how school councils select their principals.

69. On or about June 15, 2022, Mr. Muhammad participated in the principal's forum as the sole remaining qualified finalists to become Lindblom's next principal.

70. Customarily, when there are two finalists and the ALSC confers and votes on the new principal, the choice is announced at the conclusion of the Forum.

71. Clearly, with only one finalist participating in the Forum, the selection of Mr. Muhammad as the new principal of Lindblom should have been announced at the conclusion of the Forum, but it was not.

72. Unbeknownst to Mr. Muhammad at the time, as a third attempt to prevent Mr. Muhammad from becoming principal of Lindblom, Ms. White received a call from Ms. Williams-Ford stating that the ALSC did not need to make a decision for principal that evening.

73. As a result of that telephone call, the moderator of the Forum, Ms. Marcella Wheatly (hereinafter, "Ms. Wheatly"), then informed Mr. Muhammad and those in attendance that a selection would not be announced that evening.

74. Ms. Wheatly then informed Mr. Muhammad that he would receive a call from an ALSC member regarding next steps.

75. The call to stop the open vote was in violation of CPS policy. (See Exhibit I, Part 6, p.12)

76.    On or about June 16, 2022, undeterred by the CBE's blatant, patent, and unmitigated attempts to thwart Lindblom's efforts to select Mr. Muhammad as its new principal, the ALSC submitted Mr. Muhammad's name as the new principal of Lindblom to Mr. LaRosa.

77.    That submission to Mr. LaRosa included the vote tally sheet of the ALSC and the proposed four-year contract for Mr. Muhammad.

78.    On or about June 17, 2022, in a fourth attempt to thwart their efforts, Ms. White received a communication from Ms. Williams-Ford, in her official capacity as the then Director of LSC Relations, and informed Ms. White that the ALSC did not have to vote for a principal candidate right away and they could wait before making their final selection.

79.    The vote from the ALSC, however, was already done.

80.    Upon information and belief, in a fifth attempt to prevent Mr. Muhammad from becoming Lindblom's next principal, Ms. Williams-Ford called Ms. White later in the same day and said to her, "[p]lease understand that you do not have to settle for the candidate that is left. You can start the school year with an interim Principal and revisit the Principal process later. Your current candidate may not be the candidate for Lindblom. You should look at other candidates."

81.    Ms. White responded to the CBE's director of LSC relations and said, "[t]he Council has reviewed 11 candidates and we have made our choice. We do not need to look at additional candidates."

82.    Displeased with Ms. White's response, Ms. Williams-Ford, in a sixth attempt to thwart Mr. Muhammad's selection as the next principal of Lindblom, sent an email to Ms. White informing her that a quorum of eight ALSC members was needed to properly vote for Mr. Muhammad as principal.

10

83.   Upon information and belief, Ms. Williams-Ford informed Ms. White that there had to be eight members present for the vote even though the state regulations only require a vote of seven in favor of the candidate to become the new principal. (See Exhibit I, Part 6, p. 2)

84.   This countermand from the CBE was perplexing to Ms. White considering multiple votes were taken throughout the previous year with only seven ALSC members present and there was never a countermand from the CBE for the results of any of those votes.

85.   In addition, the ALSC previously selected Mr. Bevis to be the principal of Lindblom with only seven votes.

86.   It was only when the ALSC voted for Mr. Muhammad to become the next principal of Lindblom that the CBE called to attempt to vacate and/or veto the vote by dictating that eight members had to be present for a quorum.

87.   Nevertheless, Ms. White set another ALSC meeting to take place on June 23rd where the new quorum number would be present.

88.   Nine members were present where eight voted in favor of Mr. Muhammad becoming the next principal and one member abstained.

89.   On or about June 24, 2022, as a result of said vote, and in accordance with CBE policies and procedures, the ALSC forwarded Mr. Muhammad's four-year principal's contract to Mr. LaRosa for final execution along with the vote tally.  (See Exhibit J)

90.   On June 27, 2022, in a seventh attempt to prevent Mr. Muhammad from becoming the principal of Lindblom, Mr. LaRosa informed Ms. Ayala and Ms. White that he preferred two or three candidates in order for him to feel he was making a choice of a candidate.

11

91.    The discriminatory basis for Mr. LaRosa's statement is evidenced by the fact that ALSC guidelines indicate that the ALSC does not have to submit more than one name to the Network chief if the ALSC reaches a consensus on the selection. (See Exhibit I, p.13)

92.    On or about July 5, 2022, in an eight attempt to prevent Mr. Muhammad from entering into a four-year contract as principal and in conformity with the defendants' discrimination against Mr. Muhammad, Mr. LaRosa sent to Mr. Muhammad an interim contract.

93.    Said interim contract does not contain the same protections as the four-year contract that the Lindblom ALSC sent to Mr. LaRosa for final approval.

94.    Neither of Mr. Muhammad's immediate predecessors, Mr. Mather nor Mr. Bevis, ever had an interim contract sent to them to sign in place of the four-year contract the ALSC sent to the Network 16 office on their behalf.

95.    On or about July 5, 2022, Mr. LaRosa emailed Mr. Muhammad an interim contract.-

96.    On or about that same day, Ms. Jackeline Perea, Principal Transition Specialist, informed Mr. Muhammad that his four-year contract would go before the CBE on August 24, 2022.

97.    On or about July 7, 2022, after reluctantly signing the interim contract because it was not the full four-year contract, Mr. Muhammad began his first day at Lindblom.

98.    Mr. Muhammad began his responsibilities at Lindblom under the interim contract.

99.    On or about August 24, 2022, however, Mr. LaRosa, with no explanation, presented Mr. Muhammad with a letter from Ms. Tingwall stating that he would not be awarded a four-year contract even though the ALSC approved it. (See Exhibit J-1)

100.    On or about the same day, Mr. LaRosa's supervisor, Ms. Felicia Sanders, sent a separate letter to the Lindblom school community stating that the issuance of Mr. Muhammad's four-year contract would be postponed. (See Exhibit K)

101.  On or about September 1, 2022, Mr. Muhammad met with Ms. Tingwall to see what steps he needed to complete to finally be awarded his four-year contract.

102.  Mr. Tingwall, in an effort to stonewall Mr. Muhammad, did not answer any of his questions but simply redirected him back to Mr. LaRosa, which is who sent him to Ms. Tingwall.

103.  On or about September 5, 2022, Mr. Muhammad emailed both Mr. LaRosa and Ms. Tingwall to ascertain who would answer his questions as to why he was denied his four-year contract and to ascertain what steps would be necessary for him to achieve to finally receive it, but did not receive a response.

104.   On or about September 15, 2022, Mr. Muhammad emailed Mr. LaRosa and Ms. Tingwall again with six questions related to the August 24, 2022, letter.  (See Exhibit K-1, p.3)

105.  On or about September 23, 2022, Mr. LaRosa sent an email to Mr. Muhammad identifying a list of things for him to accomplish as a prerequisite to receiving his four-year contract. (See Exhibit L)

106.  From the beginning of the school year, Mr. Muhammad began diligently accomplishing the items identified by Mr. LaRosa.

107.  He also had numerous successes in moving Lindblom forward. (See Group Exhibit M)

108.  Unbeknownst to Mr. Muhammad at the time, however, the Defendants had no intention of issuing Mr. Muhammad a four-year contract irrespective of what he accomplished from the list issued by Mr. LaRosa on September 23, 2022.

109.  In fact, after Mr. Muhammad completed the items identified for the 1st quarter of the school year, CBE personnel did not issue any other benchmarks and stopped meeting with Mr. Muhammad in October of 2022 regarding the steps needed to be taken to receive the four-year contract.

13

110.    On or about December 9, 2022, Mr. LaRosa, in furtherance of the concerted effort among the Defendants to prevent Mr. Muhammad from receiving his four-year contract, wrote Mr. Muhammad an email informing him that he would not be given such a contract.

111.    At no time prior to Mr. Muhammad receiving that email from Mr. LaRosa was he ever informed by any Defendant as to what items he failed to complete on the list of prerequisites tendered to him on September 23, 2022.

**Unwanted Teacher Accountability**

112.    In addition to his religion and race, part of the problem Mr. Muhammad ran into at Lindblom was that he immediately began holding teachers and staff accountable to the CBE policies.

113.    That, in turn, caused multiple teachers and staff to make false allegations and accusations about Mr. Muhammad that the CBE, Mr. Martinez, Mr. LaRosa, and others used to further their discriminatory intent to remove Mr. Muhammad from his principalship.

114.    Mr. Muhammad entered Lindblom on the interim contract as principal during the summer.

115.    One of the first things Mr. Muhammad noticed was that staff was being paid for summer school, yet there were no students in the building. (See Exhibit N)

116.    CBE regulations dictate that students must be in the building for summer programming if teachers and staff are to be paid.

117.    Perplexed by this arrangement, on or about July 8, 2022, Mr. Muhammad learned from Assistant Principal Keren Carpenter that in addition to the 15 staff members who were being paid, several department chairs were working from home during the summer.

118.   Mr. Muhammad directed Ms. Carpenter to email the department chairs to submit a list of items being worked on for the summer. (See Exhibit O)

119.   As of June 2023, no teacher or staff submitted anything as proof that they were doing legitimate work for the summer and not simply collecting a check without earning it.

120.   Mr. Muhammad identified school funds from multiple football games that were missing and deposited into the personal bank account of a teacher. (See Exhibit P)

121.   Mr. Muhammad reported said irregularity to Mr. LaRosa but he did not institute any disciplinary proceedings against the teacher.

122.   Mr. Muhammad identified school fundraisers that resulted in school funds being deposited into a teacher's personal bank account. (See Exhibits Q and Q-1)

123.   Mr. Muhammad identified teachers working second jobs without authorization from CBE.

124.   Mr. Muhammad identified $390,000.00 in unspent school funds from the previous school year. (See Exhibit R)

125.   Mr. Muhammad brought to the athletic director's attention that 37 Lindblom coaches were out of compliance with Illinois High School Association standards. (See Exhibit S)

126.   Mr. Muhammad identified a teacher who was bringing her child to school during the school day in violation of CBE regulations. (See Exhibit T)

127.   Mr. Muhammad identified numerous vendors who had not been paid from the previous school year, though funds were available to satisfy said invoices. (See Exhibit U)

128.   Mr. Muhammad identified a nurse operating in the school, who was there from the year before, who was administering medicine to a student whose Individualized Education Plan neither called for nor authorized the administering of said medication. (See Exhibit V)

129.   Mr. Muhammad identified that the school athletic director was covering up student injuries that occurred during unauthorized off-campus cheerleading practices. (See Exhibit W)

130.   Mr. Muhammad identified thousands of dollars of school equipment that was in the building, but not being utilized in the classrooms for the students' benefit until he directed the equipment to be installed in the necessary classrooms. (See Exhibit X)

131.   Mr. Muhammad identified that proper financial records were not being kept and that one person, Ms. Laconda McDaniels, the school clerk, was responsible for handling all school finances in violation of CBE regulations. (See Exhibit Y, pp. 3-4)

132.   Mr. Muhammad identified that special education records were out of compliance from the previous school year. (See Exhibit Z)

133.   Mr. Muhammad identified security breaches in the school and forthrightly addressed them to the proper personnel. (See Exhibit AA)

134.   A principal with this type of commitment and dedication to upholding the letter and the spirit of the CBE's regulations, in any nondiscriminatory environment, would be recognized and celebrated.

135.   In, however, the discriminatory environment that existed in the CBE under Mr. Martinez and Mr. LaRosa, Mr. Muhammad's actions of holding teachers and staff accountable to the CBE regulations, to the students, and to the parents of the students was met with a an even more concerted and coordinated effort by and between the Defendants to have Mr. Muhammad removed as principal of Lindblom.

136.   When Defendants became clear that Mr. Muhammad governed himself "by the book" and carried out his responsibilities as Lindblom's principal with the utmost care and consideration, they turned to harassing Mr. Muhammad through false allegations.

**General Harassment**

*False Claim of Accompanying a Student to a Citgo Gas Station*

137.  On or about November 18, 2022, a student went to the Citgo gas station near Lindblom to buy snacks.

138.  The parent of that student learned of the matter and made a complaint to Mr. LaRosa. (See Exhibit BB, p. 13)

139.  Mr. LaRosa did not bring that matter to Mr. Muhammad to get clarity or confirmation.

140.  He took the matter directly to Ms. Tarrant of the Law Department and she directed him to inquire of Mr. Muhammad about the validity or invalidity of the allegation.

141.  When Mr. LaRosa inquired of the incident with Mr. Muhammad, Mr. Muhammad denied such an allegation because he has never accompanied any students off campus to go to a gas station to buy snacks before, during, or after school.

142.  The initial communication by the parent did indicate that her child said the "principal" escorted her to the gas station, however, upon further inquiry of the child, she acknowledged that she mistook the dean of students for the principal. *Id.*

143.  Thus, the student absolved Mr. Muhammad of what would have been a violation of CBE policies; however, Ms. Tarrant still included the matter in her investigative report on Mr. Muhammad, which the CBE, Mr. Martinez, Ms. Sanders, Ms. Tingwall, and/or Mr. LaRosa used to terminate Mr. Muhammad.


*False Claim of Not Reporting Sexual Assault*

144.  CBE policies require any allegation of sexual assault that involves an adult to be reported first to 911 if it is an emergency. (See Exhibit CC, pp. 10-12)

17

145. If said allegation is not an emergency, CBE policies require the person informed of such assault to call the Department of Children and Family Services and then to call the Office of Inspector General. *Id*.

146. After such calls are made, the administrator, teacher, or staff who became aware of the alleged assault is to make a record of the matter in the ASPEN reporting system (hereinafter, "ASPEN"). *Id*.

147. Multiple Lindblom teachers and staff failed to follow the steps outlined by the CBE and failed to report the matters into the ASPEN system, but, as part of the scheme to build a case for firing Mr. Muhammad, the only person investigated for the failures of other Lindblom teachers and staff was Mr. Muhammad.

148. To this point, in a situation that took place in September of 2022, Ms. Maria Aguilera (hereinafter, "Ms. Aguilera"), a Lindblom security guard, became aware of a sexual misconduct complaint made the previous year by a student at Lindblom.

149. Ms. Aguilera, however, failed to follow the steps outlined by the CBE.

150. When Mr. Muhammad became aware that Ms. Aguilera failed to follow CBE regulations, he wrote her an email informing her to follow the guidelines or she may be held accountable. (See Exhibit DD)

151. On another occasion, Mr. Muhammad became aware of another claim of sexual misconduct and a Lindblom staff member did not follow the CBE regulations on the matter.

152. When Mr. Muhammad became aware that Mr. Shonn Williams failed to follow CBE regulations, he wrote him an email informing him of what steps to follow to be in compliance with CBE guidelines. (See Exhibit EE)

153. In January of 2023, another matter came to the attention of Lindblom staff regarding an inappropriate comment by a security guard to a female student.

154. Neither the staff member who received the complaint nor his supervisor who he reported the matter to followed the appropriate steps as outlined by the CBE.

155. In fact, neither staff member even secured the name of the student who made the complaint.

156. When Mr. Muhammad became aware of it, he directed the supervisor to write a report memorializing what happened so there would be some record of it. (See Exhibit FF)

157. Over the course of multiple complaints by this same student at different times, five Lindblom staff members received first and secondhand information about the sexual misconduct by a Lindblom security guard.

158. Not one of these Lindblom staff members followed the CBE regulations and not one of them was investigated by the Law Department for policy violations.

159. When Mr. Muhammad became aware of the multiple complaints, he directed his assistant principal, Ms. Adrienne Morales, to follow the CBE regulations and to make a report in the ASPEN system.

160. When said report was completed, Mr. Muhammad's name was nowhere in the report as being a person the student spoke to directly about the incidents. (See Exhibit GG)

161. In furtherance of the scheme and conspiracy to have Mr. Muhammad fired from Lindblom on discriminatory grounds, Mr. Muhammad became the sole focus of Ms. Tarrant's investigation through the Law Department for failure to properly report sexual misconduct.

162. Ms. Tarrant's complicit role in the scheme to undermine Mr. Muhammad's principalship and to have him fired is further evidenced by the fact that according to CBE regulations, the Law Department is not even authorized to investigate matters of sexual harassment.

19

163. That authority vests with the Office of Inspector General. (See Exhibit CC, p. 4)

164. Thus, Ms. Tarrant investigated the only person who followed CBE policies and directed noncompliant Lindblom staff to follow CBE policies once he became aware of it and she cited in her report as being founded that Mr. Muhammad violated CBE policies when it came to a student who was the victim of sexual misconduct by a Lindblom security guard.

165. This baseless report on Mr. Muhammad became a significant part of the basis upon which the CBE, Mr. Martinez, Ms. Sanders, Ms. Tingwall, and/or Mr. LaRosa terminated Mr. Muhammad and noted to the Lindblom parents through Mr. LaRosa that it was, "due to an investigation that substantiated findings against Mr. Muhammad." (See Exhibit HH)

166. These Defendants used Ms. Tarrant to substantiate eighteen different findings on baseless allegations against Mr. Muhammad to justify his termination as principal, all of which occurred on a discriminatory basis, namely religion, race, and gender. (See Exhibit BB)

**Unlawful Termination**

167. On or about March 31, 2023, the CBE, removed Mr. Muhammad from Lindblom as the principal on a Zoom call and issued letters confirming the removal. (See Exhibit II)

168. On the same day, Mr. LaRosa, in furtherance of these unlawful actions, issued a letter to the Lindblom community informing them that "CPS removed Abdul Muhammad from his principal duties at Lindblom effective immediately due to an investigation that substantiated findings against Mr. Muhammad." (See Exhibit HH)

169. Prior to said termination, the CBE did not give Mr. Muhammad notice of any issues with his performance or notice of any alleged violations of school policies and regulations.

170. Said termination was the result of discrimination and, thus, was unlawful.

20

<u>**C**OUNTS</u>

<u>**Count 1**</u>
Violation of 42 U.S.C. § 2000e–2 – Religious Discrimination
Muhammad v. CBE, Martinez, Sanders, Tingwall, LaRosa

171.  Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

172.  42 U.S.C. §2000e–2(a)(1) states in relevant part:

> It shall be an unlawful employment practice for an employer— (1)to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

173.  The CBE, Mr. Martinez, Ms. Sanders, Ms. Tingwall, and Mr. LaRosa violated 42 U.S.C. §2000e–2(a)(1) when it discriminated against Mr. Muhammad by not offering to him the same customary four-year contract that was offered to his two predecessors who were white and, upon information and belief, were non-Muslim.

174.  Mr. Muhammad, however, while being similarly situated as these previous principals, was disparately treated by CBE by and through the other Defendants because he is Muslim.

<u>**Count 2**</u>
Violation of 42 U.S.C. § 2000e–2 – Workplace Harassment
Muhammad v. CBE, Martinez, Sanders, LaRosa

175.  Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

176.  Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964.

177.  The unwelcomed conducted exhibited by the CBE, Mr. Martinez, and Mr. LaRosa against Mr. Muhammad as outlined herein was on the basis of religion and race, *inter alia*.

178.  Said harassment created a work environment for Mr. Muhammad that was intimidating, hostile, and, at times, abusive.

21

179.  To this point, Mr. Martinez, on behalf of the CBE, directed Mr. LaRosa to give Mr. Muhammad a list of demands for him to comply with in order to receive his duly offered four-year contract.

180.  The CBE, Mr. Martinez, Ms. Sanders and Mr. LaRosa knew that they would not issue Mr. Muhammad his four-year contract even if he completed the demands tendered to him.

181.  When Mr. Muhammad never received any feedback from the list of demands tendered to him, he came to know that said demands were tendered to him for the purpose of harassing him and causing him to do things that would have no affect on him receiving his contract.

182.  Moreover, upon information and belief, Mr. LaRosa was in direct contact with Lindblom teachers and staff who made false reports about Mr. Muhammad and those teachers and staff became agents of Mr. LaRosa in creating an intimidating, hostile, and offensive work environment for Mr. Muhammad.

183.  Said actions by Mr. Muhammad's staff that were instigated by the CBE, Mr. Martinez, and Mr. LaRosa were distracting and interfered with Mr. Muhammad's work performance and caused emotional stress in the process.


### Count 3
Violation of 42 U.S.C. §1981 – Make Contracts
Muhammad v. CBE, Martinez, Sanders, LaRosa

184.  Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

185.  Title 42 U.S.C. §1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

22

186. Upon information and belief, but for Mr. Muhammad's race as being Black, the CBE would have honored the four-year contract the Lindblom ALSC forwarded to Mr. LaRosa as it honored the multiple four-year contracts issued to it by the Lindblom ALSC for Mr. Muhammad's two white male predecessors.

187. The CBE denied Mr. Muhammad's ability to enter into the full four-year contract with it because he is Black, male, and Muslim.

188. In particular, Mr. Martinez and Mr. LaRosa acted with malice in substituting the four-year contract the ALSC forwarded on behalf of Mr. Muhammad with the interim contract because they knew the interim contract would not afford Mr. Muhammad the same protections as the four-year contract.

189. Upon information and belief, Mr. Martinez contacted Mr. LaRosa and directed him not to accept and/or execute the four-year contract forwarded by Lindblom's ALSC on behalf of Mr. Muhammad solely because he is a Muslim member in the Nation of Islam.

190. In the alternative, Mr. LaRosa unilaterally refused to accept and/or execute the four-year contract forwarded by Lindblom's ALSC on behalf of Mr. Muhammad solely because he is a Muslim member in the Nation of Islam.

191. Thus, Mr. Martinez and Mr. LaRosa acted with malice or, in the alternative, acted with reckless indifference to Mr. Muhammad's federally protected right to make a contract with the CBE in violation of 42 U.S.C. §1981.

192. Moreover, Mr. LaRosa's issuance of a sham list of prerequisites for Mr. Muhammad to accomplish that he knew he would never recognize or give him credit for is further evidence that he denied Mr. Muhammad the right to enter into the four-year contract the

ALSC forwarded to him on Mr. Muhammad's behalf with malice or in reckless disregard for his rights protected under 42 U.S.C. §1981.

193. Said actions by Mr. Martinez and Mr. LaRosa warrant a finding of punitive damages.

**Count 4**
42 U.S.C. §1983 – Due Process Violation
Muhammad v. CBE, Martinez, Sanders, LaRosa, Williams-Ford

194. Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

195. The Fourteenth Amendment to the U.S. Constitution prohibits deprivation of an individual's life, liberty, or property without due process of law.

196. The Fourteenth Amendment is enforceable upon the states pursuant to 42 U.S.C. §1983.

197. Title 42 U.S.C. §1983 states, in relevant part:

> Every person who, under color of any statute…of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

198. Defendants Martinez, Sanders, LaRosa, and Williams-Ford acted under color of state law when they personally discriminated against Mr. Muhammad by engaging in actions from their respective CBE positions that prevented him from entering into a four-year contract.

199. Moreover, on or about March 31, 2023, the CBE terminated Mr. Muhammad's employment as an interim principal without any notice and removed him from the eligibility list to be a principal.

200. On or about April 18, 2023, nearly three weeks after being removed from Lindblom, the CBE tendered to Mr. Muhammad an investigation report that served as the basis of his termination though the CBE did not afford him the proper due process of knowing the charges in advance and having a hearing to refute the charges prior to being terminated.

201.   Said actions deprived Mr. Muhammad of his property interests without due process of law in violation of the Fourteenth Amendment because he was never given notice of the charges, he had no opportunity to review evidence or question the accusers, and the CBE did not afford him any opportunity to present rebuttal evidence prior to the adverse finding.

202.   Defendant Martinez knew or should have known that the actions he took within his sphere of official responsibility would violate Mr. Muhammad's constitutional rights, or, in the alternative, he took said actions with the malicious intention to cause a deprivation of Mr. Muhammad's constitutionally protected rights.

203.   Moreover, Defendants Sanders, LaRosa, and Williams-Ford knew or should have known that the actions they took within their sphere of official responsibility to carry out the unlawful objectives of the CBE and Mr. Martinez would violate Mr. Muhammad's constitutional rights or that they took said actions with the malicious intention to cause a deprivation of Mr. Muhammad's constitutional rights.

204.   In the alternative, Defendants Martinez, Sanders, LaRosa, and Williams-Ford acted with deliberate indifference to the impact and results of their actions upon Mr. Muhammad as they each contributed to the deprivation of his constitutionally protected rights to make a contract with the CBE particularly after the Lindblom ALSC sent the four-year contract to Mr. LaRosa for the benefit of Mr. Muhammad.


**Count 5**
42 U.S.C. §1983 – Equal Protection Violation
Muhammad v. CBE, Martinez, Sanders, LaRosa, Williams-Ford

205.   Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

206.   The Fourteenth Amendment to the U.S. Constitution prohibits deprivation of an individual's life, liberty, or property without equal protection of the law.

207. Defendants Martinez, Sanders, LaRosa, and Williams-Ford acted under color of state law when they personally participated in a scheme to create employment hurdles and obstacles that were not imposed upon the two prior principals of Lindblom.

208. Mr. Muhammad was intentionally treated differently from his predecessors who were similarly situated as he and there was no rational basis for such disparate treatment.

209. Thus, said Defendants did not afford Mr. Muhammad equal protection under the law.

**Count 6**
Violation of 42 U.S.C. §1985 – Conspiracy to Deprive
Muhammad v. All Defendants

210. Plaintiff repeats and realleges paragraphs 35-169 and 184-192 as though fully set forth herein.

211. Title 42 U.S.C. §1985 states, in relevant part:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, ...the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

212. All the Defendants herein conspired for the purposes of depriving Mr. Muhammad equal protection of the law, the right to make contracts, the right to be free from religious, gender, and racial discrimination, the right to be free from workplace harassment, and the right to receive pension plan contributions and credits that would have accrued to him but for his unlawful termination on a discriminatory basis, *inter alia*.

213. Thus, these Defendants violated 42 U.S.C. §1985.

26

**Count 7**
Violation of 42 U.S.C. §1986 – Neglects / Refuses to Prevent Violation
Muhammad v. Sanders, Tingwall, LaRosa

214.   Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

215.   Title 42 U.S.C. §1986 states in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and
> mentioned in section 1985 of this title, are about to be committed, and having power to
> prevent or aid in preventing the commission of the same, neglects or refuses so to do, if
> such wrongful act be committed, shall be liable to the party injured, or his legal
> representatives, for all damages caused by such wrongful act, which such person by
> reasonable diligence could have prevented[.]

216.   Defendants Sanders, Tingwall, and LaRosa each authored letters indicating their
knowledge of some issues Mr. Martinez alleged had with Mr. Muhammad. (See Exhibits
J, K, and JJ)

217.   Upon information and belief, each of these Defendants knew the CBE and Mr. Martinez's
scheme to terminate Mr. Muhammad was on discriminatory grounds because each of them
participated in some aspect of the scheme.

218.   Each of these Defendants, however, either neglected or refused to exercise the authority
vested in them from the CBE in their respective positions to prevent the commission of this
discriminatory scheme against Mr. Muhammad, which ultimately led to his termination.

219.   Thus, these Defendants violated 42 U.S.C. §1986.

**Count 8**
820 ILCS §115, *et. seq*. – Retirement Plan Contribution Violation
Muhammad v. All Defendants

220.   Plaintiff repeats and realleges paragraphs 35-169 as though fully set forth herein.

221.   At retirement, the Chicago Teachers Pension Fund pays out the average of the employees
four highest paying years within the last 10 years of their employment.

27

222. When Mr. Muhammad arrived at Lindblom in July of 2022, he was in the last 10 years of employment with the CBE.

223. In the school year 2022, Mr. Muhammad's salary was approximately $167,544.93.

224. Had the Defendants not discriminated against Mr. Muhammad and conspired to create the pretext for him to be unlawfully terminated, Mr. Muhammad would have been issued the four-year contract, which would have paid him no less than $167,544.93 for four years.

225. That salary would have factored into what he would be paid during retirement.

226. By discriminating against him and, thereby, orchestrating his unlawful termination, the Defendants' actions negatively impacted what Mr. Muhammad will receive during retirement since he is currently within the final 10 years of when he can retire from the CBE.

227. After the unlawful, discriminatory actions by the Defendants, which resulted in his termination, Mr. Muhammad's pensionable salary dropped to $3,298.22 by July of 2024.

228. Clearly, such a dramatic drop in salary would negatively impact the calculations for the four highest years in the last 10 years of his employment with the CBE.

229. In addition, Mr. Muhammad's service credit, which constitutes pensionable time, was reduced from 1 year in 2023 to .02941 year in 2024.

230. Moreover, prior to his unlawful termination, the CBE paid into his pension plan, which positively impacted the amount he would receive during retirement.

231. Since his unlawful termination, the CBE no longer pays into my pension.

232. Said cessation of contributions to Mr. Muhammad's retirement plan has a negative impact on the amount he would receive during retirement.

233. Thus, said actions by the Defendants violates 820 ILCS §115, *et. seq*.

## PRAYER FOR RELIEF

Wherefore, for the foregoing reasons, Mr. Abdul Muhammad respectfully requests this Court to enter a judgment in his favor and against the Defendants and to award him:

a. Compensatory damages, including, but not limited to, lost wages, reduced earning capacity, and lost pension fund contributions and credits,

b. Punitive damages against the individual defendants,

c. Attorneys' fees pursuant to, *inter alia*, 42 U.S.C. §1988,

d. Court costs and filing fees, and

e. Any other relief the Court finds appropriate.

Respectfully submitted,

/s/ *Sa'ad Alim Muhammad*

Sa'ad Alim Muhammad, on behalf of Mr. Abdul Muhammad

Law Office of Power & Dixon
Sa'ad Alim Muhammad, (ARDC# 6244757)
1525 E. 53rd Street, Suite 447
Chicago, Illinois 60615
312-263-5989
SAM@PowerandDixon.com

Abdul Arif Muhammad (ILND General Bar #6093)
1525 E. 53rd Street, Suite 447
Chicago, Illinois 60615
215-313-0738
Abdularifmuhammad@gmail.com

Law Office of Yolanda Muhammad
Yolanda Muhammad (ARDC# - 6327358)
1507 E. 53rd Street, Suite 501
Chicago, Illinois 60615
773-563-0746
Yolandamuhammad@outlook.com